**ALLSTATE INSURANCE COMPANY,**
**Plaintiff–Appellee,**

v.

**Dwight H. SMITH, M.D.,**
**Defendant–Appellant.**

**No. 89–56183.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1990.

Decided Jan. 18, 1991.

Rehearing Denied April 9, 1991.

Christopher Ashworth and Jonathan M. Turner, Garfield, Tepper, Ashworth & Epstein, Los Angeles, Cal., for defendant-appellant.

Alan G. Buckner and Howard S. Vallens, Simon, Buckner & Haile, Marina del Rey, Cal., for plaintiff-appellee.

Before FLETCHER, BOOCHEVER and WIGGINS, Circuit Judges.

BOOCHEVER, Circuit Judge:

In this diversity action, Dwight H. Smith, M.D. (Smith) appeals from the district court's declaratory judgment, finding that Allstate Insurance Co. (Allstate) was not required to reimburse Smith pursuant to his "all risk" insurance policy for damage to his business equipment and improvements, and for his loss of earnings. We reverse.

## BACKGROUND

Smith rented space in a Los Angeles office building for his medical practice. In the fall of 1988, he bought an "all risk" insurance policy from Allstate covering his business property for "loss or damage resulting from direct physical loss" with certain enumerated exclusions including those for losses caused by faulty workmanship and rain.

On December 18, 1988, a roofing contractor was working on the building pursuant to an earthquake standards compliance or-

der issued by Los Angeles's Department of Building & Safety. During the day, the contractor removed most of the roof but did not put a temporary cover over the exposed premises. Unfortunately, that night it rained and Smith's office equipment and improvements were damaged.

Subsequently, Smith filed a claim with Allstate for the repair and replacement of his business property and for his lost earnings due to disruption of business. Allstate filed a declaratory judgment action, requesting that the court find that Smith's losses were not covered by his policy. The district judge, based on a stipulated factual record, ruled that Allstate had no duty to reimburse Smith because his losses were caused by "faulty workmanship." Smith timely appealed.

## DISCUSSION

Because this diversity case arises in California, California law applies. *See Hampton v. Gebhardt's Chili Powder Co.*, 294 F.2d 172, 172 (9th Cir.1961).

### A. *"Faulty Workmanship"*

 As the facts are undisputed, we review the district court's interpretation of the insurance policy de novo. *Kilroy Indus. v. United Pac. Ins. Co.*, 608 F.Supp. 847, 850 (C.D.Cal.1985). The first issue we must face is whether the contractor's failure to cover the exposed premises constituted "faulty workmanship" within the meaning of the policy's relevant exclusion clause, which states:

3. We do not cover any loss or damage caused by any of the following. However, any ensuing loss not excluded or excepted in this policy is covered.

　　·　　·　　·　　·　　·

c. Faulty, inadequate or defective:

　　·　　·　　·　　·　　·

ii. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; ...

 Under California law, ambiguities in insurance policy provisions are resolved in favor of the insured. *Price v. Zim Israel Navigation Co.*, 616 F.2d 422, 426 (9th Cir.1980). Smith argues that the term "faulty workmanship" is ambiguous because it is susceptible to different reasonable interpretations.

An insurance contract is ambiguous if the court finds that the language is susceptible to different interpretations. But the court must construe the clause with regard to the contract as a whole, and its meaning is to be derived from the circumstances of the particular case and not in the abstract. "Ambiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms." *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1340 (9th Cir.1989) (citations omitted). Smith contends that "faulty workmanship" is susceptible to at least two different interpretations: (1) the flawed quality of a finished product, or (2) a flawed process. Failing to put a temporary cover over the exposed premises would not be "faulty workmanship" under the flawed product interpretation as that interpretation necessarily requires the presence of an object to evaluate. As the roofer had not completed any portion of the new roof when the damage occurred, there is no object to evaluate to determine whether the workmanship was faulty. Under the flawed process interpretation, however, failing to put a temporary cover on while replacing a roof may constitute "faulty workmanship."[1]

 Interpreting the clause, "faulty workmanship," as the flawed quality of the product worked upon makes sense in the context of the policy as a whole. Another section of the policy provides coverage for losses "involving collapse of a covered building ... caused by ... use of defective

---

1. Smith also argues that even the flawed process interpretation would permit him to recover, on the ground that the contractor's failure to cover the exposed premises was simple negligence, wholly unrelated to the quality of the contrac- tor's skills or art. Because we conclude below that the flawed product interpretation is a reasonable one, we express no view as to the soundness of this argument.

materials or *methods of construction*. (Emphasis added). Thus, if Allstate meant "faulty workmanship" to include losses resulting from flawed processes of construction, it could have borrowed language from the collapse section and stated, "We do not cover any loss or damage caused by ... faulty ... methods of construction." Its failure to do so leads to a reasonable inference that Allstate did not intend for "faulty workmanship" to mean faulty methods of construction.

The flawed product interpretation also is bolstered by the provision in the "faulty workmanship" exclusion that "any ensuing loss not excluded or excepted in this policy is covered." It is easy to imagine a situation where a flawed product could cause ensuing losses. For example, a leaky roof could lead to water damage to Smith's property. Presumably, water damage would be an ensuing loss covered by the policy but repairing the roof would not be covered. On the other hand, it is difficult to imagine what covered "ensuing losses" could flow from a flawed process, because "any loss or damage caused" by the process would be excluded. In other words, if the broader "flawed process" interpretation is accepted as the only reasonable interpretation of the policy, the "ensuing loss" language is seemingly rendered meaningless.[2]

Moreover, there are at least two dictionary definitions of "workmanship":

1: something effected, made, or produced: WORK

2: the art or skill of a workman: CRAFTSMANSHIP.

Webster's Ninth New Collegiate Dictionary 1359 (1984). The first definition supports a product interpretation, while the second definition supports a process interpretation.

In addition to the surrounding language of the policy and the dictionary definitions, the reasonableness of the flawed product interpretation is supported by numerous cases where courts found "faulty workmanship" based on a defect in the object of the workmanship. *See, e.g. Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338 (9th Cir.1989) (defectively constructed apartment building); *U.S. Indus., Inc. v. Aetna Casualty & Sur. Co.*, 690 F.2d 459 (5th Cir.1982) (defective steel tower); *Kroll Constr. Co. v. Great Am. Ins. Co.*, 594 F.Supp. 304 (N.D.Ga.1984) (poorly waterproofed walls). While these cases did not consider the flawed process/flawed product distinction, they support the conclusion that one reasonable interpretation of "faulty workmanship" is a flawed product.

Although Allstate cites to cases where courts, including the Ninth Circuit, found the term "workmanship" itself to be unambiguous, *see e.g., Tzung*, 873 F.2d at 1340–41 and *Kroll*, 594 F.Supp. at 307, it is important to remember that the policy's meaning "is to be derived from the circumstances of the particular case and not in the abstract." *Tzung*, 873 F.2d at 1340. *Tzung* and *Kroll* did not address the issue with which we are confronted, namely, whether one reasonable construction of "faulty workmanship" is a flawed product. Nevertheless, in both cases a flawed product was the basis of the finding of "faulty workmanship."

■ Therefore, in light of the circumstances of this case, we find the term "faulty workmanship" ambiguous, and consequently apply the construction most favorable to the insured. *Kilroy*, 608 F.Supp. at 850–51. Under the flawed product interpretation, the exclusion does not apply because Smith's losses were not caused by a flawed product, but by failure to protect the premises during the roof repair process.

## B. *Efficient Proximate Cause*

The remaining issue is whether the contractor's failure to cover the exposed premises or the rain was the proximate cause of

---

**2.** Although it is possible that we could have avoided examining the various interpretations of the term "faulty workmanship" by finding that Smith's losses were covered "ensuing losses," the parties did not advance this argument in their briefs. Therefore, we rely on the "however, any ensuing loss" language only to demonstrate that the flawed product interpretation is reasonable.

Smith's losses. "[W]here, as here, the facts on appeal are settled and not in dispute,.... [t]he proximate causation becomes a question of law which is subject to the appellate court's independent determination." *Premier Ins. Co. v. Welch,* 140 Cal.App.3d 720, 724, 189 Cal.Rptr. 657, 659 (1983).

Allstate argues that rain, an excluded risk under the policy, caused the damage to Smith's property. Smith argues that the roofer's failure to cover the exposed premises, a covered risk, caused his losses. "[I]n an all-risk policy, where the 'efficient cause' of the loss is a covered risk under the policy, coverage cannot be defeated merely because an excluded risk contributed to the loss." *Kilroy,* 608 F.Supp. at 856 (citations omitted).

Recently, in *Garvey v. State Farm Fire & Cas. Co.,* 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704, (1989), the California Supreme Court affirmed the efficient proximate cause analysis first set forth in *Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963):

> *Sabella* held that: " '[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' " (citations omitted).

*Id.* 48 Cal.3d at 402, 257 Cal.Rptr. at 295, 770 P.2d at 707.

We find that although rain "operate[d] more immediately in producing the disaster," it was the contractor's failure to cover the premises that "set in motion" the chain of events leading to Smith's losses. *See Premier,* 140 Cal.App.3d at 725, 189 Cal.Rptr. at 660 ("efficient cause of loss was negligently maintained subdrain rather than the rainfall"). The roofer's failure to cover the exposed premises, therefore, was the efficient proximate cause of Smith's losses.

## CONCLUSION

Based on a reading of Smith's insurance policy in its entirety, we find the "faulty workmanship" clause ambiguous and adopt the interpretation most favorable to Smith. Consequently, Smith's losses resulting from failure to cover the exposed premises are not excluded. Moreover, failure to cover the premises, not rain, was the efficient proximate cause of Smith's losses. Allstate, therefore, must reimburse Smith for his losses to the extent provided by the policy.

REVERSED.