#26424-a-DG

**2013 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JAMIE SWENSON and RANDY
STEWART, Individually and as
Assignees of Dale Jelen and DJ
Construction, LLC,                                      Plaintiffs and Appellants,

v.

AUTO-OWNERS INSURANCE
COMPANY,                                              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE LAWRENCE E. LONG
Judge

* * * *

DANIEL K. BRENDTRO of
Zimmer, Duncan & Cole, LLP
Sioux Falls, South Dakota

and

ANTHONY T. SMITH of
Hellmuth & Johnson, PLLC
Edina, Minnesota                                      Attorneys for plaintiffs
                                                      and appellants.

* * * *

                                                      CONSIDERED ON BRIEFS ON
                                                      MARCH 18, 2013

                                                      OPINION FILED **05/15/13**

ZACHARY W. PETERSON
JACK H. HIEB of
Richardson, Wyly, Wise, Sauck
  & Hieb, LLP
Aberdeen, South Dakota

and

TIMOTHY P. TOBIN of
Gislason & Hunter, LLP
Minneapolis, Minnesota

Attorneys for defendant
and appellee.

#26424

GILBERTSON, Chief Justice

[¶1.] Jamie Swenson and Randy Stewart entered into a contract with Dale Jelen, d/b/a DJ Construction, LLC (collectively DJ Construction), in 2007 to build a home on their property. In 2009, construction on the home was halted after Swenson and Stewart discovered the home had sustained significant water damage. Swenson and Stewart brought suit against DJ Construction, seeking to recover for the damage to their home and DJ Construction's failure to complete the home. DJ Construction contacted its insurer, Auto-Owners Insurance Company (Owners), seeking defense and indemnity against Swenson and Stewart's claims. Owners denied DJ Construction's requests after determining there was no coverage under the terms of the policy. Subsequently, Swenson and Stewart entered into a stipulated judgment and settlement agreement with DJ Construction in which DJ Construction confessed judgment and assigned its rights and claims against Owners to Swenson and Stewart. Swenson and Stewart then filed suit against Owners based upon Owners' failure to defend and indemnify DJ Construction. Both Owners and Swenson and Stewart filed motions for summary judgment, and the circuit court granted summary judgment in favor of Owners. Swenson and Stewart appeal.

**FACTS**

[¶2.] In this case, the material facts are undisputed. Swenson and Stewart own real property located at 47711-273rd Street in Harrisburg, South Dakota. In November 2007, Swenson and Stewart entered into a building construction agreement with DJ Construction in which DJ Construction agreed to build a home on their property. The total contract price was $1,285,952. At the time the parties

-1-

entered into the contract, DJ Construction was insured by Owners under an insurance policy that included a Commercial General Liability Coverage Form (the Policy).[1]  The Policy provided coverage in the amount of $1,000,000 per occurrence.

[¶3.]          Under the terms of the Policy, Owners was responsible for paying "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."[2]  The Policy further provided that Owners "will have the right and duty to defend the insured against any 'suit' seeking those damages."  To be covered under the Policy, the "property damage" was required to be caused by an "occurrence."[3]  Additionally, the Policy contained several coverage exclusions.

[¶4.]          After entering into the contract with Swenson and Stewart, DJ Construction began working on the home.  However, construction was suspended at the end of 2007 because Swenson and Stewart failed to obtain adequate financing for the project.  While the construction was on hold, various building materials

---

1.     DJ Construction initially obtained the Policy for the period of January 1, 2007, through January 1, 2008, but renewed the Policy to maintain coverage through January 1, 2010.

2.     The Policy defines "property damage" as:
       a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
       b.  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it. . . .

3.     For purposes of the Policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

(including framing lumber) were left outside at the construction site. These materials were not protected from exposure to rain, snow, etc., but DJ Construction visited the construction site periodically to check on the property and remove snow.

[¶5.]      In July 2008, Swenson, Stewart, and DJ Construction executed a second building construction agreement in which the total contract price was increased to $1,363,952 to account for additional work. DJ Construction then resumed work on the home, which proceeded for approximately one year. The building materials that had been exposed to rain, snow, etc. were utilized in constructing the home. Further, DJ Construction did not protect the basement of the home from exposure to snow and rain during construction. As a result, standing water accumulated in the basement at times.

[¶6.]      In August 2009, construction on the home was halted again after Swenson and Stewart discovered mold growth, water damage, and other construction defects in the home. At the time construction was stopped, work on the home was not complete.[4] Swenson and Stewart then hired Forensic Building Science, Inc. (FBS) to inspect the home. Amongst other things, FBS concluded that DJ Construction failed to properly protect the building materials from exposure to rain and snow during the time construction was suspended, and that DJ Construction failed to protect the basement from rain and snow during construction. As a result, FBS concluded the home sustained significant water

---

4.      The home currently remains incomplete.

damage. FBS recommended that the home be demolished and rebuilt due to the extensive damage.[5]

[¶7.] DJ Construction submitted a claim to Owners for defense and indemnity against Swenson and Stewart's potential claims on August 5, 2009. Owners retained Claims Associates Incorporated to "inspect the damages and determine the extent of the damages" to the home. The investigator for Claims Associates Incorporated issued a report on August 24, 2009. On September 18, 2009, an Owners claim representative submitted a memorandum to Owners' legal department concluding that DJ Construction was not covered under the Policy.

[¶8.] Swenson and Stewart formally commenced suit against DJ Construction in November 2009, asserting numerous statutory and common-law claims. In December 2009, Owners sent DJ Construction correspondence formally denying DJ Construction's requests for indemnity and defense after concluding there was no coverage for any claims under the terms of the Policy. On June 29, 2011, Swenson and Stewart entered into a stipulated judgment and settlement agreement (the Agreement) with DJ Construction regarding their claims.[6] Under the terms of the Agreement, DJ Construction agreed to a confession of judgment in favor of Swenson and Stewart in the amount of $1,545,121 and agreed to assign

---

5. Swenson and Stewart obtained an estimate indicating that the cost to demolish and rebuild the home to its present level of completion would be $2,809,312.

6. On September 29, 2010, Swenson and Stewart notified Owners of its intent to enter into the Agreement with DJ Construction. Owners responded that it would not be changing its position that the claims asserted by Swenson and Stewart were not covered under the terms of the Policy.

Swenson and Stewart all of the rights and claims it held against Owners for defense, indemnity, and/or bad faith. In exchange, Swenson and Stewart agreed to satisfy the judgment solely from Owners. The Agreement was approved by the circuit court on July 18, 2011.

[¶9.]  On October 5, 2011, Swenson and Stewart filed suit against Owners alleging that Owners committed a breach of contract due to its failure to defend and indemnify DJ Construction, and that Owners acted in bad faith in failing to defend and indemnify DJ Construction. Swenson and Stewart also sought a declaration as to Owners' obligation to defend and indemnify DJ Construction. Owners submitted an answer and counterclaim to the complaint on September 29, 2011. In its counterclaim, Owners sought a declaration that it had no duty to defend or indemnify DJ Construction.

[¶10.]  Swenson and Stewart filed a motion for partial summary judgment with regard to their claims on February 29, 2012. On March 3, 2012, Owners also filed a motion for summary judgment. On June 13, 2012, the circuit court entered an order granting Owners' motion for summary judgment and denying Swenson and Stewart's partial motion for summary judgment. The circuit court determined there was no coverage under the Policy because multiple Policy exclusions applied. As a result, the circuit court concluded Owners had no duty to defend or indemnify DJ Construction.[7] Swenson and Stewart appeal, arguing the circuit court erred in

---

7.  As an alternative basis for granting summary judgment in favor of Owners, the circuit court concluded there was no "occurrence" (meaning there was no coverage under the Policy), and thus, Owners had no duty to defend or indemnify DJ Construction.

granting summary judgment in favor of Owners on Swenson and Stewart's breach of contract and bad faith claims. Swenson and Stewart assert summary judgment was improper because the circuit court erred in determining Owners had no duty to defend or indemnify DJ Construction under the terms of the Policy.

## ANALYSIS AND DECISON

[¶11.]     **1.     Whether the circuit court erred in granting summary judgment in favor of Owners on Swenson and Stewart's breach of contract and bad faith claims based upon its determination that multiple Policy exclusions applied.**

[¶12.]     "When reviewing a circuit court's grant of summary judgment, this Court only decides 'whether genuine issues of material fact exist and whether the law was correctly applied.'" *Wheeler v. Farmers Mut. Ins. Co. of Neb.*, 2012 S.D. 83, ¶ 8, 824 N.W.2d 102, 105 (quoting *Zephier v. Catholic Diocese of Sioux Falls*, 2008 S.D. 56, ¶ 6, 752 N.W.2d 658, 662). When the material facts are undisputed, this Court's review "is limited to determining whether the trial court correctly applied the law." *Id.* (quoting *De Smet Ins. Co. of S.D. v. Pourier,* 2011 S.D. 47, ¶ 4 n.1, 802 N.W.2d 447, 448 n.1). "Summary judgment will be affirmed if there exists *any* basis which would support the circuit court's ruling." *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 2009 S.D. 69, ¶ 14, 771 N.W.2d 623, 628-29 (quoting *Schwaiger v. Avera Queen of Peace Health Servs.*, 2006 S.D. 44, ¶ 7, 714 N.W.2d 874, 877).

[¶13.]     The interpretation of an insurance policy is a question of law, reviewed de novo. *Demaray v. De Smet Farm Mut. Ins. Co.,* 2011 S.D. 39, ¶ 8, 801 N.W.2d 284, 287 (citing *Auto-Owners Ins. Co. v. Hansen Hous., Inc.*, 2000 S.D. 13, ¶ 10, 604 N.W.2d 504, 509). "The existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract, which must be

construed according to the plain meaning of its terms." *Biegler v. Am. Family Mut. Ins. Co.*, 2001 S.D. 13, ¶ 20, 621 N.W.2d 592, 598-99 (citing *W. Cas. & Sur. Co. v. Waisanen*, 653 F. Supp. 825, 827 (D.S.D. 1987)). "To ascertain whether a duty to defend exists we look to the complaint and 'other evidence of record.'"[8] *Demaray*, 2011 S.D. 39, ¶ 8, 801 N.W.2d at 287 (quoting *State Farm Fire & Cas. Co. v. Harbert*, 2007 S.D. 107, ¶ 18, 741 N.W.2d 228, 234). "The insurer 'bears the burden of showing that it has no duty to defend its insured.'" *State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 638 (S.D. 1995) (quoting *N. Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908, 912 (S.D. 1992)). "This burden is satisfied when the insurer shows the claim '*clearly* falls outside of policy coverage.'" *Harbert*, 2007 S.D. 107, ¶ 18, 741 N.W.2d at 234 (quoting *Wertz*, 540 N.W.2d at 638). "If, after considering the complaint, and when appropriate, other record evidence, doubt exists whether the claim against the insured arguably falls within the policy coverage, such doubts must be resolved in favor of the insured." *Biegler*, 2001 S.D. 13, ¶ 20, 621 N.W.2d at 599 (quoting *City of Fort Pierre v. United Fire & Cas. Co.*, 463 N.W.2d 845, 847 (S.D. 1990)).

[¶14.]     In granting summary judgment in favor of Owners on Swenson and Stewart's breach of contract and bad faith claims, the circuit court determined that several Policy exclusions for "property damage" applied so as to clearly exclude Swenson and Stewart's claims from coverage. Specifically, the circuit court

---

8.     Thus, contrary to Swenson and Stewart's contention, the source of an insurer's duty to defend is not confined to the complaint alone.

determined that Exclusions j(5), j(6), and j(7) applied. With regard to these

exclusions, the Policy provides in relevant part that the insurance does not apply to:

> j. Damage to Property
>
> "Property damage" to:
> . . .
> (5) Personal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured;
> (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> (7) That particular part of any property that must be restored, repaired or replaced because "your work"[9] was incorrectly performed on it;
> . . .
> Paragraph (7) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard[.]"[10]

---

9.  "Your work" is defined in relevant part as: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."

10. In relevant part, "products-completed operations hazard" is defined to include:
    > [A]ll "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
    > . . .
    > (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
    >     (a) When all of the work called for in your contract has been completed.
    >     (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(continued . . .)

We address each exclusion in turn.

**[¶15.]**    **a.    Whether the circuit court erred in determining Exclusion j(5) applied.**

**[¶16.]**    On appeal, Swenson and Stewart argue Exclusion j(5) does not apply for multiple reasons.  First, Swenson and Stewart argue that because Owners did not plead Exclusion j(5) as an affirmative defense in its answer to Swenson and Stewart's complaint, Owners waived this defense.  However, we disagree that Exclusion j(5) even qualifies as an affirmative defense.  In its answer, Owners asserted as an affirmative defense that Swenson and Stewart's complaint "failed to state a cause of action against [Owners]."  Owners then set forth some of the terms of the Policy, including the language of various Policy exclusions.  Although Owners did not specifically note Exclusion j(5) in its answer, after addressing various Policy provisions Owners broadly asserted that "[t]he claims at issue . . . are not covered under the Owners policy and/or are excluded."  Swenson and Stewart cite to no authority indicating that an insurance company is required to identify specific policy provisions in these circumstances.  Therefore, we reject this argument.

**[¶17.]**    Next, Swenson and Stewart claim Owners is estopped from relying on Exclusion j(5) because it failed to assert Exclusion j(5) as a basis for denying coverage when it formally denied DJ Construction's request for defense and indemnity.  However, as noted by Owners, this Court's prior case law requires Swenson and Stewart to prove DJ Construction was prejudiced by Owners' failure

_____

(. . . continued)

       (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

to identify Exclusion j(5) as a basis for denying coverage in order for estoppel to apply. *See Nat'l Sun Indus., Inc. v. S.D. Farm Bureau Ins. Co.*, 1999 S.D. 63, ¶ 12, 596 N.W.2d 45, 47 (stating that "[t]he crucial elements of estoppel . . . are the insurer's stated reliance upon one ground for denying liability without stating additional known grounds, and resulting prejudice to the claimant"). In this case, Swenson and Stewart have not established that DJ Construction suffered prejudice due to Owners' initial failure to identify Exclusion j(5) as a basis for denying coverage. Swenson and Stewart's unsupported assertion that DJ Construction was prejudiced is simply not enough to estop Owners from asserting Exclusion j(5) as a basis for denying coverage. *See id.* ¶ 13, 596 N.W.2d at 47-48 (holding that insurer was not estopped from asserting exclusion because plaintiff "failed to point to any specific evidence in the record that would support its prejudice claim[,]" and plaintiff's general assertion of prejudice was insufficient). Therefore, this argument is also without merit.

[¶18.]     Third, Swenson and Stewart argue Exclusion j(5) does not apply because Owners failed to establish DJ Construction had *exclusive* care, custody, or control over the personal property (the building materials left at the construction site during the winter of 2007 to 2008). In support of this argument, Swenson and Stewart cite to case law from other jurisdictions in which exclusivity of control was required for the "care, custody, or control" exclusion to apply. However, South Dakota has not adopted a requirement that the "care, custody, or control" be exclusive. Further, Exclusion j(5) does not contain language requiring care, custody, or control to be exclusive. *See Culhane v. W. Nat'l Mut. Ins. Co.*, 2005 S.D.

97, ¶ 27, 704 N.W.2d 287, 297 (recognizing that the function of courts is "neither [to] rewrite the parties' contract nor add to its language").  Therefore, proof of exclusivity of care, custody, or control is not required in this case.

[¶19.]        Overall, under the circumstances of this case, Exclusion j(5) applies so as to exclude coverage for Swenson and Stewart's claims regarding the damage to the framing lumber and other building materials DJ Construction left outside during the winter of 2007 to 2008.  The building materials were personal property.  Additionally, they were in the care, custody, and control of DJ Construction when they were damaged because DJ Construction was the general contractor for the construction site, DJ Construction maintained the construction site during the winter, and the damage to the building materials occurred due to DJ Construction's failure to adequately protect the building materials from the rain, snow, etc. while construction was suspended.  As a result, the circuit court did not err in determining Exclusion j(5) applied.

[¶20.]        **b.      Whether the circuit court erred in determining Exclusion j(6) applied.**

[¶21.]        As previously indicated, Exclusion j(6) excludes coverage for property damage to "[t]hat particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations[.]"  Swenson and Stewart argue Exclusion j(6) is not applicable to "at least some of the damage to the Home."  Specifically, Swenson and Stewart argue Exclusion j(6) does not apply to their claims regarding the damage to the framing lumber and building materials that were exposed to rain, snow, etc. during the winter of 2007 to 2008.

However, the plain language of Exclusion j(6) establishes that Exclusion j(6) applies to property damage to "that particular part of *real* property . . . ." Thus, Exclusion j(6) expressly limits its application to damage to real property, rather than personal property. At the time the building materials sustained damage as a result of being exposed to rain and other elements, the building materials were personal property. Therefore, by its own terms, Exclusion j(6) is not applicable to Swenson and Stewart's claims regarding the damage to the building materials.

[¶22.] Nevertheless, Exclusion j(6) remains applicable to Swenson and Stewart's claims regarding the damage to the home that occurred during construction.[11] In particular, Exclusion j(6) excludes coverage for Swenson and Stewart's claims concerning the damage the home sustained as a result of DJ Construction's failure to protect the basement of the home from exposure to rain and snow (leading to significant water damage), DJ Construction's use of the damaged materials in constructing the home, etc. Exclusion j(6) applies because the damage to the home occurred under the supervision and direction of DJ Construction, the damage occurred while DJ Construction and its subcontractors were actively performing the construction work (and prior to DJ Construction's completion of its contractual duties), and the damage resulted from the negligent work of DJ Construction and its subcontractors. Therefore, the circuit court did not err in concluding that Exclusion j(6) applied.

---

11. By only arguing Exclusion j(6) is not applicable to their claims regarding the damage to the building materials, Swenson and Stewart apparently do not contest the fact that Exclusion j(6) does apply to their claims concerning the damage to their home.

**[¶23.]**     **c.     Whether the circuit court erred in determining Exclusion j(7) applied.**

**[¶24.]**     As discussed above, Exclusion j(7) excludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it[.]"  Further, the Policy indicates that "[p]aragraph (7) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard[.]"  On appeal, Swenson and Stewart argue Exclusion j(7) does not apply because Exclusion j(7) is ambiguous and general rules of contract construction require any ambiguities to be construed in favor of the insured.  *See Am. Family Mut. Ins. Co. v. Elliot*, 523 N.W.2d 100, 102 (S.D. 1994) (stating that "[i]f the language of the policy is ambiguous, the policy should be construed liberally in favor of the insured and strictly against the insurer").  In support of their claim that Exclusion j(7) is ambiguous, Swenson and Stewart cite the Ninth Circuit's decision in *Allstate Ins. Co. v. Smith*, 929 F.2d 447 (9th Cir. 1991).

**[¶25.]**     In *Smith*, the insured purchased an "all risk" insurance policy to cover the portion of an office building he rented in which he conducted his medical practice.  *Id.* at 448.  While working on the building, a roofing contractor removed most of the roof, but did not put a temporary cover over the exposed portion of the building.  *Id.* at 448-49.  It rained, and the insured's office suffered damages.  *Id.* at 449.  The insured then filed a claim with his insurer.  *Id.*  The insurer responded by filing a declaratory judgment action, requesting that the court rule the insured's losses were not covered under the policy.  *Id.*  The court ruled the policy exclusion

for "faulty workmanship"[12] applied, thus excusing the insurer from reimbursing the insured. *Id.*

[¶26.]      On appeal, the Ninth Circuit determined the phrase "faulty workmanship" was subject to two interpretations: (1) the flawed quality of a finished product; or (2) a flawed process. *Id.* Thus, the court concluded the "faulty workmanship" exclusion was ambiguous. *Id.* at 450. As a result, the court applied the "flawed quality of a finished product" interpretation, because it was the most favorable to the insured. *Id.* Using this interpretation, the court concluded "the exclusion does not apply because [the insured]'s losses were not caused by a flawed product, but by failure to protect the premises during the roof repair process." *Id.*

[¶27.]      Swenson and Stewart compare this case to *Smith*, arguing that Exclusion j(7) is ambiguous because it is unclear whether it applies to: (1) the flawed quality of the finished product; or (2) a flawed process. Further, they argue that the "flawed quality of the finished product" interpretation should also be applied in this case as it is most favorable to DJ Construction. However, *Smith* is readily distinguishable from this case. First, the language used in the exclusion in *Smith* is different than the language of Exclusion j(7). While the policy in *Smith* excluded coverage for loss or damage caused by "faulty workmanship," the phrase "faulty workmanship" is not found within Exclusion j(7). Instead, Exclusion j(7) provides that the Policy excludes coverage for property damage to "[t]hat particular

_____

12.    The exclusion provided that the policy: "d[id] not cover any loss or damage caused by . . . c. [f]aulty, inadequate or defective: . . . ii. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; . . . ."

part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Thus, simply because the phrase "faulty workmanship" was found to be ambiguous in *Smith* does not make Exclusion j(7) ambiguous. The second notable difference between this case and *Smith* is that *Smith* involved an insurance policy for first-party property coverage (obtained to protect the insured from loss due to damage to the insured's own property), whereas in this case, DJ Construction obtained third-party liability insurance to protect it from liability claims. Therefore, because the facts of *Smith* are materially distinguishable, the Ninth Circuit's rationale in *Smith* is not applicable in this case.

[¶28.] Instead, we conclude that the language of Exclusion j(7) is unambiguous and that it applies so as to exclude Swenson and Stewart's claims from coverage. *See Alverson v. Nw. Nat'l Cas. Co.*, 1997 S.D. 9, 559 N.W.2d 234; *Haugan v. Home Indem. Co.*, 86 S.D. 406, 197 N.W.2d 18 (1972). First, the record establishes the home sustained significant damage that needs to be restored, repaired, or replaced (although the FBS report recommended demolition and replacement due to the substantial repair costs). Second, the record indicates DJ Construction performed the work incorrectly by using the damaged building materials in constructing the home, failing to protect the home from rain, snow, and other weather during construction, etc. Third, the record establishes the damage to the building materials and the home was caused by DJ Construction's improper work. Accordingly, the initial requirements for applying Exclusion j(7) are satisfied.

[¶29.] As an additional requirement for Exclusion j(7)'s application, the Policy provides that Exclusion j(7) does not apply to property damage included in

the "products-completed operations hazard." However, the Policy also provides that work that has not been completed is not included as a "products-completed operations hazard." In this case, DJ Construction entered into a contract with Swenson and Stewart to build the home, and DJ Construction's work on the home was not completed at the time the property damage occurred. Therefore, Exclusion j(7) remains applicable. As a result, the circuit court did not err in concluding Exclusion j(7) applied.

[¶30.]        Because we conclude that Exclusions j(5), j(6), and j(7) apply, and that the circuit court did not err in reaching this conclusion, there was no coverage for Swenson and Stewart's claims under the terms of the Policy. As a result, Owners had no duty to defend or indemnify DJ Construction. Therefore, the circuit court did not err in granting summary judgment in favor of Owners on Swenson and Stewart's breach of contract claims.

[¶31.]        Further, as to Swenson and Stewart's bad faith claim, this Court has indicated that "for proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits . . . and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial[.]" *See Dakota, Minn. & E. R.R. Corp.*, 2009 S.D. 69, ¶ 17, 771 N.W.2d at 629 (alteration in original). In this case, Owners had a reasonable basis for denying coverage because multiple Policy exclusions applied. Thus, Owners did not act in bad faith in rejecting DJ Construction's requests for defense and indemnity. Accordingly, the circuit court did not err in granting summary judgment in favor of Owners on Swenson and Stewart's bad faith claim.

[¶32.]	In reaching these conclusions, we acknowledge that the issues regarding the existence of "property damage" caused by an "occurrence" are threshold issues.  However, even if the record contained sufficient allegations of "property damage" caused by an "occurrence," DJ Construction was not entitled to defense or indemnity from Owners if the Policy exclusions applied.  Consequently, because we conclude that the circuit court correctly determined the Policy exclusions were applicable, we need not address the parties' disputes regarding whether Swenson and Stewart's claimed damages to their home constitute "property damage," and if so, whether the "property damage" was caused by an "occurrence."  Further, we conclude that the additional issues Swenson and Stewart raise on appeal are without merit due to the dispositive nature of our determinations regarding the Policy exclusions.  Therefore, we affirm.

[¶33.]	KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.