#27932, #27969, #27938, #27955-aff in pt, rev in pt & rem-JMK
**2017 S.D. 51**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

(#27932, #27969)

OWNERS INSURANCE COMPANY,                    Plaintiff and Appellant,

   v.

TIBKE CONSTRUCTION, INC.,                    Defendant and Appellee,

   and

JOEY BROWN and SONYA BROWN
and JERRY'S EXCAVATING, INC.,                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(#27938, #27955)

OWNERS INSURANCE COMPANY,                    Plaintiff and Appellee,

   v.

TIBKE CONSTRUCTION, INC.,                    Defendant and Appellant,

   and

JOEY BROWN and SONYA BROWN,
and JERRY'S EXCAVATING, INC.,                 Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN R. PEKAS
Judge

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2017
OPINION FILED 08/23/17

RONALD A. PARSONS JR. of
Johnson Janklow Abdallah
  Reiter & Parsons LLP
Sioux Falls, South Dakota

MARK D. O'LEARY
Sioux Falls, South Dakota

DANIEL R. FRITZ
NICOLE O. TUPMAN of
Lindquist & Vennum, PLLP
Sioux Falls, South Dakota

Attorneys for plaintiff and
appellant Owners Insurance
Company #27932 and plaintiff
and appellee #27938.

Attorneys for defendant and
appellee Tibke Construction,
Inc. #27932 and defendant and
appellant #27938.

KERN, Justice

[¶1.]        Homeowners sued a general contractor and a subcontractor for damages to their home.  General contractor was insured under a commercial general liability (CGL) policy and requested defense and indemnification from its insurer.  Insurer disputed coverage but defended general contractor under a reservation of rights.  Insurer later filed a declaratory-judgment action, seeking a judgment that the CGL policy did not provide coverage for general contractor against homeowners' allegations.  The parties filed cross-motions for summary judgment.  The circuit court denied the motions, finding that a genuine issue of material fact existed regarding the foreseeability of homeowners' damages.  Both parties filed petitions for intermediate appeal, which we granted and consolidated.  We affirm the denial of summary judgment in favor of insurer, but we reverse the denial of summary judgment in favor of general contractor and remand for entry of an order consistent with this opinion.

## BACKGROUND

[¶2.]        Joey and Sonya Brown hired Tibke Construction Inc. as a general contractor to build a new house in Brandon, South Dakota.  Tibke hired Jerry's Excavating Inc. as a subcontractor to prepare the soil and perform excavation work.  In October 2012, Tibke completed the project.

[¶3.]        On September 3, 2014, the Browns sued Tibke and Jerry's Excavating for negligent construction and breach of contract.  The Browns alleged that Jerry's Excavating failed to conduct soil-compaction testing before construction.  In their complaint, the Browns averred the home was unknowingly built upon highly

expansive soils, resulting in damage to the home in the form of "excessive settlement, cracking, structural unsoundness, and other damages." The Browns submitted that the damages were caused exclusively by acts or omissions of Jerry's Excavating but that the damage existed only on portions of the home not worked on by Jerry's Excavating. The Browns did not allege that Tibke improperly constructed any portion of the home, including the foundation and walls.

[¶4.]    Owners Insurance Company insured Tibke under a CGL policy. Under the terms of the policy, Owners provided coverage for claims arising out of property damage caused by an occurrence and not subject to policy exclusions. Tibke submitted a claim to Owners for defense and indemnification from the Browns' lawsuit. Owners disputed coverage but agreed to defend Tibke in the suit under a reservation of rights.

[¶5.]    On February 3, 2016, Owners filed an action for declaratory relief against Tibke, Jerry's Excavating, and the Browns, seeking a determination of the parties' rights and obligations under the CGL policy. Owners alleged that it had no duty to defend or indemnify Tibke for the property damage because "faulty workmanship" cannot be an occurrence under the CGL policy and that two exclusions, j(7) and l, precluded coverage. Owners and Tibke filed cross-motions for summary judgment on the question of coverage in the declaratory-judgment action. The Browns and Jerry's Excavating joined Tibke's motions.

[¶6.]    On June 13, 2016, the circuit court held a hearing on the cross-motions for summary judgment. After argument, the court declined to rule on the question of whether Tibke's claim was covered by the policy. Instead, the court denied the

motions, finding that there were disputed questions of material fact regarding whether there was expansive soil under the home and, if so, whether it was foreseeable.[1]

[¶7.]     Owners and Tibke filed petitions for an intermediate appeal, which we granted and consolidated. We restate the three issues raised by the parties as follows:

1.   Whether the damages alleged by the Browns were caused by an *occurrence* as defined by the CGL policy.

2.   Whether exclusion j(7) precludes coverage under the CGL policy for the Browns' alleged property damage.

3.   Whether exclusion l precludes coverage under the CGL policy for the Browns' alleged property damage.

## STANDARD OF REVIEW

[¶8.]     "We review a court's denial of a motion for summary judgment under the de novo standard of review." *N. Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 12, 873 N.W.2d 57, 61. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

1.   In rendering its ruling, the circuit court stated:

> The underlying problem still comes back to whether or not it was foreseeable, and I understand that there's some questions about whether or not it was virgin soil ready to be constructed on, however, in this particular instance, I don't believe that Tibke Construction can adequately invoke the coverage terms, unless there's been the ability to have a fact finder say it's foreseeable. And I'm going to be denying the motion for summary judgment for both parties based on that, because I believe there are questions of fact that ought to be resolved, and I think it's going to be done in the underlying lawsuit at this point—so I'm going to be denying the cross motions for summary judgment on that.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting SDCL 15-6-56(c)).

[¶9.]    "The interpretation of an insurance policy is a question of law, reviewed de novo." *Swenson v. Auto-Owners Ins. Co.*, 2013 S.D. 38, ¶ 13, 831 N.W.2d 402, 407. "The existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract, which must be construed according to the plain meaning of its terms." *Id.* We consider the provisions of the CGL policy as a whole. *Nelson v. Farmers Mut. Ins. Co. of Neb.*, 2004 S.D. 86, ¶ 11, 684 N.W.2d 74, 77.

[¶10.]    "When an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 9, 822 N.W.2d 724, 727. "This burden is satisfied when the insurer shows the claim '*clearly* falls outside of policy coverage.'" *State Farm Fire & Cas. Co. v. Harbert*, 2007 S.D. 107, ¶ 18, 741 N.W.2d 228, 234 (quoting *State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 638 (S.D. 1995)). When "the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted." *Culhane v. W. Nat'l Mut. Ins. Co.*, 2005 S.D. 97, ¶ 19, 704 N.W.2d 287, 293.

## DECISION

[¶11.]    1.    *Whether the damages alleged by the Browns were caused by an* occurrence *as defined by the CGL policy.*

[¶12.] Tibke purchased a CGL policy, which contains an insuring clause providing a grant of coverage. The insuring clause is set forth in § I of the policy and provides:

> 1. Insuring Agreement
>    a. [Owners] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.
>    b. This insurance applies to . . . "property damage" only if:
>       (1) The … "property damage" is caused by an "occurrence[.]"

Section V defines *occurrence* and *property damage*:

> 14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> . . . .
> 18. "Property damage" means:
>    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>    b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

[¶13.] Whether the CGL policy provides Tibke coverage for the alleged damages to the house initially depends on whether there was *property damage* caused by an *occurrence*. It is undisputed that the Browns suffered property damage as a result of construction on unstable soil. Accordingly, the only issue relevant to the initial question of coverage is whether the alleged failure to test the soil was an occurrence.

[¶14.] Tibke claims that the alleged failure to test the soil beneath the house was an accident and thus an occurrence. Tibke also emphasizes that under the policy, an accident includes "continuous or repeated exposure to substantially the

same general harmful conditions," such as expansive soil beneath a house. Citing *Couch on Insurance* and several cases, Owners argues in response that "a claim for damages arising from incorrectly performed work," like failing to test the soil beneath a construction site, does not constitute an accident because the CGL policy is not meant to cover faulty workmanship. Further, Owners argues that the alleged faulty workmanship in this case is not a covered occurrence because it arose "from the defendants' intentional choice not to conduct soil testing and their deliberate decision to construct the house on that soil despite their choice not to test it."

[¶15.]     The CGL policy does not define *accident*, but we have defined it as "an event that is 'undesigned, sudden, and unexpected.'" *Corner Constr. Co. v. U.S. Fid. & Guar. Co.*, 2002 S.D. 5, ¶ 28, 638 N.W.2d 887, 894 (quoting *Taylor v. Imperial Cas.*, 82 S.D. 298, 302, 144 N.W.2d 856, 858 (1966)). In determining whether an event is an accident, we assess the event "according to the quality of the result rather than the quality of the causes." *Taylor*, 82 S.D. at 304, 144 N.W.2d at 859. Thus, if inadvertent faulty workmanship causes unexpected injuries to people or property, it may constitute an accident and thus an occurrence. "Currently, the majority of state supreme courts who have decided the issue of whether inadvertent faulty workmanship is an accidental 'occurrence' potentially covered under the CGL policy have decided that it can be an 'occurrence.'" *K&L Homes, Inc. v. Am. Family Mut. Ins. Co.*, 829 N.W.2d 724, 729-31 (N.D. 2013) (listing state supreme courts reaching this conclusion).

[¶16.]     We decided this question in *Corner Construction* by holding an insured's subcontractor's faulty work could qualify as an occurrence under a CGL

policy, in agreement with the majority of other jurisdictions. 2002 S.D. 5, ¶¶ 27-29, 638 N.W.2d at 894-95; *see also Haugan v. Home Indem. Co.*, 86 S.D. 406, 408-11, 197 N.W.2d 18, 20-21 (1972) (contemplating that an insured's subcontractor's failure to perform work in a "workman-like manner" is an occurrence). In *Corner Construction*, an insured's subcontractor "left voids in the insulation between . . . studs and failed to securely attach [a] vapor barrier . . . [which] fell, causing temperature fluctuations and other ventilation problems." *Id.* ¶ 29, 638 N.W.2d at 895. Here, as in *Corner Construction*, the subcontractor's faulty work "result[ed] in property damage that was neither expected nor intended by the insured[.]" *Id.* Accordingly, the alleged failure to test soil was an accident and thus an occurrence under the CGL policy. *See also Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 69-71, 75-79 (Wis. 2004) (holding that the "faulty site-preparation advice of [a] soil engineering subcontractor," which led to improper soil preparation and caused soil settlement under a building, was an occurrence for the purposes of a CGL policy).

[¶17.] Owners' argument that the alleged faulty work was intentional and thus not an accident is unavailing. The failure to test the soil was not an intentional or deliberate action but an unplanned omission, which caused an unexpected result. "[A] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007).

[¶18.]    The failure to test the soil was an occurrence because it was an accident—an unexpected event. This occurrence allegedly caused property damage to the house in the form of excessive settlement, cracking, and structural unsoundness. Tibke has established that coverage exists under § I of the CGL policy.

[¶19.]    2.    *Whether exclusion j(7) precludes coverage under the CGL policy for the Browns' alleged property damage.*

[¶20.]    We next address whether any exclusions in the CGL policy bar the coverage provided by the insuring clause. Section I of the CGL policy sets forth a number of exclusions. The exclusion contained in j(7) states that:

> "Property damage" to:
> . . . .
> (7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
> . . . .
> Paragraph (7) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Section V of the CGL policy defines *your work*:

> a.    Means:
>     (1)    Work or operations performed by you or on your behalf; and
>     (2)    Materials, parts or equipment furnished in connection with such work or operations.
> b.    Includes:
>     (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>     (2)    The providing of or failure to provide warnings or instructions.

[¶21.]    Tibke claims j(7)'s plain language "does not include repairs to *correctly* performed work." Because the Browns only allege a failure to test the soil, not

defective construction of any portion of the house that was damaged, Tibke contends j(7) does not exclude the alleged property damage to the house. Owners resists Tibke's interpretation of j(7), relying on *Swenson*, 2013 S.D. 38, ¶ 29, 831 N.W.2d 402, 411, and *Haugan*, 86 S.D. 406, 197 N.W.2d 18, for the proposition that property damage to the whole of a construction project is excluded by j(7) for faulty work on a part of it.

[¶22.]        We begin our analysis with the plain language of the CGL policy. First, j(7) only applies to property damage affected by *your work*. The definition of *your work* in the policy includes "work or operations performed by [Tibke] or on [Tibke's] behalf." Jerry's Excavating was a subcontractor working on Tibke's behalf. Thus, j(7) may apply to property damage arising from Jerry's Excavating's alleged faulty work.

[¶23.]        However, j(7) only excludes property damage to "[t]*hat particular part of any property* that must be restored, repaired or replaced because 'your work' was incorrectly performed on *it*." (Emphasis added.) The word *it* refers back to *that particular part* of the property on which the insured's work was incorrectly performed. The plain language of j(7) is concerned with the repair, restoration, or replacement of a specific part of the property, not the damage to a property as a whole. "[L]iability for damage to property other than that specific incorrectly performed part is beyond the reach of [j(7)]." Scott C. Turner, *Insurance Coverage of Construction Disputes* § 32:6 (2d ed.), Westlaw (database updated June 2017). In this case, Tibke and Jerry's Excavating allegedly performed faulty work only by failing to test the soil. The Browns made no allegation concerning defective

construction of the foundation, walls, or other parts of the house that allegedly suffered property damage. The house was not that particular part of the property on which Jerry's Excavating's failure to test the soil was incorrectly performed. Therefore, j(7) does not exclude coverage for the alleged property damage to the house.

[¶24.]    Other courts have interpreted j(7) in a similar fashion. The United States Court of Appeals for the Fifth Circuit has held that language similar to j(7) here did not preclude coverage for a builder's "failure to properly water-seal the exterior finishes and retaining walls" of a condominium project, which resulted in water damage to "interior drywall, stud framing, electrical wiring, and wood flooring[.]" *Mid-Continent Cas. Co. v. HJP Dev., Inc.*, 557 F.3d 207, 210 (5th Cir. 2009).[2] The Fifth Circuit explained its interpretation of the exclusion as follows:

> The plain meaning of the exclusion—property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it"—*is that property damage only to parts of the property that were themselves the subjects of the defective work is excluded.* This becomes clear when the exclusion is broken down into its component requirements: the "particular part" referred to is the part of the property that (1) must be restored, repaired or replaced (2) because the insured's work was incorrectly performed on it. *The second requirement makes clear that the "particular part" of the property must have been the subject of incorrectly performed work.* The narrowing "that particular part" language is used to distinguish the damaged property that was itself the subject of the defective work from other damaged property that was either the subject of nondefective work by the insured or that was not worked on by the insured at all.

---

2.    The CGL policy at issue in *JHP Development, Inc.*, refers to this exclusion as j(6), but its language is nearly identical to j(7) in Owners' CGL policy. 557 F.3d at 214-15. This exemplifies the importance of analyzing the specific language used in each policy as they vary both in enumeration and content.

*Id.* at 215 (emphasis added). The language of j(7) is narrow, and we will adhere to its plain meaning. *Swenson*, 2013 S.D. 38, ¶ 13, 831 N.W.2d at 407; *see also Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 311 (6th Cir. 2010) (finding j(7) inapplicable because it makes "clear that the exclusion applies only to building parts on which defective work was performed, and not to the building generally").

[¶25.]     Our holding in *Swenson* is factually distinguishable from the present case. In *Swenson*, owners of real property hired a contractor, insured under a CGL policy, to build a house. 2013 S.D. 38, ¶ 2, 831 N.W.2d at 404. During the course of construction, the insured left "various building materials (including framing lumber)" outside and exposed to the elements. *Id.* ¶ 4, 831 N.W.2d at 405. Exposure damaged the building materials, which were incorporated into the house. *Id.* ¶¶ 4-5, 831 N.W.2d at 405. The parties eventually discovered "mold growth, water damage, and other construction defects in the home," which an investigator determined was caused by the contractor's failure to protect the building materials from exposure. *Id.* ¶ 6, 831 N.W.2d at 405. Litigation commenced, and on appeal, we held that j(7) excluded coverage for damage to the house because the contractor "performed the work incorrectly by using the damaged building materials in constructing the home, failing to protect the home from rain, snow, and other weather during construction, etc." *Id.* ¶ 28, 831 N.W.2d at 411. The damage to the home arose from incorporating defective materials into the house, which required those materials to be replaced and construction efforts duplicated. In contrast, the only alleged improper work in this case was the failure to test the soil. The Browns

did not allege that Tibke improperly constructed the foundation and other structures of the house. Thus, *Swenson* is distinguishable.

[¶26.]     Further, Owners reliance on *Haugan* is misplaced as its holding involved different exclusions. In *Haugan*, an insured under a CGL policy negligently constructed an aircraft hangar and an office building. 86 S.D. at 409, 197 N.W.2d at 20. The insured "failed to provide proper footings and other foundations," which caused portions of the building to sink into the ground and separate from the foundation, causing deterioration of the entire structure. *Id.* We held that property damage from the insured's faulty work was precluded by several exclusions. Provision (m) in the policy interpreted in *Haugan* excluded "[p]roperty damage to work performed by or on behalf of the Named insured arising out of the work or *any portion thereof*, or out of materials, parts or equipment furnished in connection therewith." *Id.* at 412, 197 N.W.2d at 21-22 (emphasis added). Exclusion (m) is broader than j(7) because it applies to property damage "arising out of the work *or any portion thereof*." (Emphasis added.) Here, j(7) only excludes property damage to *that particular part* of the property *on which* the insured incorrectly performed work. Thus, *Haugan* is inapposite for assessing the application of j(7) in this case.

[¶27.]     Owners cannot meet its burden to show that j(7) excludes coverage for property damage to the house arising from the alleged failure to test the soil. *See Ass Kickin Ranch, LLC*, 2012 S.D. 73, ¶ 9, 822 N.W.2d at 727. The allegedly damaged structures of the house were not the particular parts of property on which

Tibke or Jerry's Excavating allegedly performed its defective work. Therefore, j(7) is inapplicable.

[¶28.]      3.      *Whether exclusion l precludes coverage under the CGL policy for the Browns' property damage.*

[¶29.]      Section I also includes exclusion l, which precludes coverage for:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

Section V defines the *products-completed operations hazard* (PCOH):

> a.      Includes all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
>      . . .
>
> (2)      Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
> (a)      When all of the work called for in your contract has been completed.
> (b)      When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> (c)      When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as complete. . . .

[¶30.]      Tibke argues that exclusion l is inapplicable because it only bars coverage for property damage arising *after* the insured's work is completed. Tibke claims that the failure to test the soil occurred at the start of the project, so "[t]he foundation for the Browns' home would have been exposed to the expansive soil immediately upon being poured." Tibke concludes that alleged damage to the

foundation and the rest of the house from "the constant heaving and settling of the soil, while possibly imperceptible, would have been ongoing throughout the construction of the house." Additionally, Tibke contends Owners has failed to introduce any evidence "indicating when the damages alleged in the underlying suit began to occur."

[¶31.]     Owners believes, based on the plain language of the CGL policy, that exclusions j(7) and l operate similarly but that exclusion l excludes coverage after the project is completed, while j(7) excludes work before the project is completed. Further, Owners submits that unlike certain other CGL policies, the CGL policy in this case does not contain a "subcontractor exception" to this exclusion. The "subcontractor exception" is a feature offered in some CGL policies that provides that certain exclusions do not preclude coverage for property damage caused by the work of the insured's subcontractors. *See* Turner, *supra* ¶ 23, § 33:9 (explaining the "subcontractor exception"). Thus, Owners believes exclusion l precludes coverage regardless of whether Tibke or Jerry's Excavating caused the alleged property damage.

[¶32.]     The presence or absence of a subcontractor exception, however, is irrelevant in this case. This is because exclusion l precludes coverage for property damage to "your work" if the damage arises out of "your work . . . *or any part of it.*" (Emphasis added.) The definition of *your work* includes the insured's work or work done on the insured's behalf. Thus, it is immaterial whether Tibke or Jerry's Excavating caused the alleged property damage.

[¶33.]     We conclude, however, that the exclusion does not apply to the property damage in this case. Although the property damage to Tibke's work arose out of Jerry's Excavating's work (failure to test the soil), exclusion l applies only if the damage is included in the PCOH. Here, the property damage does not meet the definition of the PCOH because the construction of the house had "not yet been completed or abandoned." In other words, "[exclusion l] does not apply to property damage which first began before the insured's work was completed." Turner, *supra* ¶ 23, § 33:6. It is undisputed that the alleged failure to test the soil occurred at the beginning of the construction project. Tibke asserts the house suffered damage throughout construction from ongoing soil expansion and contraction before the work was finished. Owners bears the burden of proving the exclusion applies but has not produced evidence that the damages occurred after completion of construction. *Ass Kickin Ranch, LLC*, 2012 S.D. 73, ¶ 9, 822 N.W.2d at 727. Accordingly, the alleged damage to the house is not included in the PCOH, and exclusion l therefore does not exclude coverage.

## CONCLUSION

[¶34.]     The circuit court erred by denying Tibke's motion for summary judgment on the question whether the Browns' claims are covered by the CGL policy. While factual questions regarding the foreseeability of the expansive soils under the house may have been relevant to whether Tibke breached a duty to the Browns in the underlying suit, they are not relevant to the existence of coverage under the policy. The alleged failure to test the soil at the construction site was an occurrence, which triggered coverage. Neither exclusion j(7) nor exclusion l

preclude coverage in this case. The CGL policy requires Owners to defend Tibke against the Browns' suit for damages. Therefore, we affirm the judgment denying Owners' motion, reverse the judgment denying Tibke's motion, and remand for further proceedings consistent with this opinion.

[¶35.]     GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, concur.