#27946-r-GAS
**2017 S.D. 53**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LOWERY CONSTRUCTION &
CONCRETE, LLC,                                   Plaintiff and Appellant,

  v.

OWNERS INSURANCE COMPANY,               Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE WALLY EKLUND
Retired Judge
\* \* \* \*

HEATHER M. LAMMERS BOGARD
STEPHEN C. HOFFMAN of
Costello, Porter, Hill, Heisterkamp,
  Bushnell & Carpenter, LLP
Rapid City, South Dakota                    Attorneys for plaintiff and
                                            appellant.


HILARY L. WILLIAMSON
MOLLY K. BECK of
Fuller & Williamson, LLP
Sioux Falls, South Dakota                   Attorneys for defendant and
                                            appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
FEBRUARY 13, 2017
OPINION FILED 08/30/17

#27946

SEVERSON, Justice

[¶1.]     Lowery Construction & Concrete, LLC appeals the circuit court's determination that Owners Insurance Company did not have a duty to defend Lowery in an action filed by homeowners Tony and Stephanie Hague. The circuit court concluded that coverage was excluded because the damage to the Hagues' home was caused by Lowery's defective work. Lowery argues the policy only excludes the defective work itself, not damage to other nondefective work. We reverse.

## Facts and Procedural History

[¶2.]     Around September 28, 2012, the Hagues hired Lowery to serve as the general contractor in the construction of their new home in Piedmont, South Dakota. The ranch-style home was built with a basement, which included a walkout entrance on the north side. The basement walkout exited onto a concrete patio. Lowery installed drain tile along the perimeter of the home's foundation but not along the patio and northeast corner of the home. Lowery substantially completed construction of the home on August 13, 2013, and then the Hagues immediately occupied the home.

[¶3.]     On February 24, 2015, the Hagues sued Lowery for breach of contract, breach of implied warranty, and negligent construction. In their complaint, the Hagues alleged that prior to moving in, they noticed: cracks forming in the walls, ceilings, and windows; several doors and windows would not open, and their frames were cracked; and the basement floor heaved near the walkout entrance. The Hagues also identified that the patio's concrete slab had previously heaved and been

replaced in July 2013, and ultimately, Lowery removed it in November 2013 because it again heaved.

[¶4.] The Hagues' theory of liability centered on Lowery's failure to install drain tile at one corner of the foundation. According to the Hagues, Lowery and its subcontractor Geidel Excavation LP determined that installing the missing drain tile would prevent the patio slab from heaving again. However, once Geidel began excavating, it became concerned that the house was not level and stopped digging. The Hagues alleged that the missing drain tile permitted water to reach expanding soil beneath the home, which caused the heaving and resulting damage.

[¶5.] Lowery was insured by Owners with commercial general liability (CGL) and inland marine coverage. In response to the Hagues' complaint, Lowery submitted a claim to Owners, which agreed to defend Lowery but reserved the right to withdraw the defense. Owners defended while Lowery and the Hagues attempted mediation, which proved unsuccessful. Owners ultimately withdrew its defense after determining that several policy exclusions applied.

[¶6.] On December 17, 2015, Lowery filed a declaratory judgment action against Owners, seeking a declaration that Owners had a duty to defend Lowery. Lowery also requested attorney fees,[1] alleging Owners' refusal to provide coverage for Lowery's claim was vexatious and without reasonable cause. Lowery filed a motion for summary judgment, which the circuit court denied. The court determined that as a matter of law, Owners had no duty to defend Lowery from the Hagues' action. Lowery appeals.

---

1.     Attorney fees are not an issue on appeal.

## Standard of Review

[¶7.]     The interpretation of an insurance contract presents a question of law, which we review de novo. *N. Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 13, 873 N.W.2d 57, 61. Likewise, we review a court's decision to grant summary judgment de novo. *Highmark Fed. Credit Union v. Hunter*, 2012 S.D. 37, ¶ 7, 814 N.W.2d 413, 415. "We view the evidence 'most favorably to the nonmoving party and resolve reasonable doubts against the moving party.'" *Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 6, 878 N.W.2d 406, 409 (quoting *Gades v. Meyer Modernizing Co.*, 2015 S.D. 42, ¶ 7, 865 N.W.2d 155, 158). However, in determining whether an insurance company has a duty to defend its insured, we accept as true facts alleged in the underlying action against the insured. *See Hawkeye-Sec. Ins. Co. v. Clifford ex rel. Clifford*, 366 N.W.2d 489, 491-92 (S.D. 1985).

## Analysis and Decision

[¶8.]     It is important to note that the question in this case is not whether the policy requires Owners to *indemnify* Lowery; rather, the question is whether Owners has a duty to *defend* Lowery against the Hagues' action. An insurer's duty to defend is distinct from—and broader than—its duty to indemnify. *Hawkeye-Security*, 366 N.W.2d at 490. "The duty to defend arises prior to the completion of litigation, and therefore insurers are required to meet their defense obligation before the scope of the insured's liability has been determined." 14 Steven Plitt et al., *Couch on Insurance* § 200:3 (3d ed.), Westlaw (database updated June 2017). Thus, "[i]t is the general rule that the duty of an insurance

company to defend its insured is to be determined by the allegations of the complaint or petition in the action brought against the insured."[2] *Hawkeye-Security*, 366 N.W.2d at 491 (quoting *U.S. Fid. & Guar. Co. v. Louis A. Roser Co.*, 585 F.2d 932, 936 (8th Cir. 1978)). "The burden of showing no duty to defend rests on the insurer[,]" which "must show the claim *clearly* falls outside of policy coverage." *Id.* at 492 (emphasis added). If it at least "arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage, the insurer must defend." *Id.* at 491. "Under this position, the duty prevails notwithstanding that ambiguous language reveals other claims not covered in the policy, and even though extraneous facts indicate the claim is false, groundless, or even fraudulent." *Id.*

[¶9.] The Hagues' complaint alleges claims for breach of contract, breach of implied warranty, and negligent construction based on Lowery's failure to install drain tile around the home and patio. The complaint asserts that because Lowery failed to install a drain tile, water reached expanding soil beneath the home and caused heaving, damage to the walls, ceiling, windows, etc. Because this case

---

2.    Although the general rule is to compare the four corners of the underlying complaint against the four corners of the insurance policy to determine whether a duty to defend exists, some courts "look to [an insurer's] actual knowledge of facts or extrinsic facts" because "[a] modern trend is for insurers to conduct a reasonable investigation of the claims prior to making a determination on the duty to defend a particular lawsuit." 14 Steven Plitt et al., *Couch on Insurance* § 200:17 (3d ed.), Westlaw (database updated June 2017). This could mean, then, that "an insurer has a duty to defend its insured in a pending lawsuit where the pleadings do not allege a covered occurrence, but the insurer knows or could reasonably ascertain facts establishing a reasonable possibility of coverage." *Id.* at § 200:22. Nonetheless, some courts restrict review to the original complaint, and the allegations in the complaint, alone, determine the duty to defend.

involves a duty to defend, we accept as true the facts alleged in the action and examine the insurance policy to determine whether Owners owed Lowery a duty to defend. *Hawkeye-Security*, 366 N.W.2d at 492.

[¶10.]     This case involves two exclusions in Lowery's CGL policy; in particular, exclusions 2(j)(6) and 2(j)(7). Those provisions exclude coverage for

> "[p]roperty damage" to:
>
>  . . . .
>
> (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> . . . .
>
> Paragraph (7) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

Under the policy, the phrase *property damage* includes "physical injury to tangible property, including all resulting loss of use of that property[,]" as well as "loss of use of tangible property that is not physically injured." The policy defines the phrase *your work* as "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations."

[¶11.]     Lowery argues the phrase *that particular part* limits application of the exclusions to work that is itself performed in a defective manner. Under Lowery's argument, the exclusions do not apply to otherwise nondefective work that is nevertheless damaged by another defective component of a larger construction

project. Owners, in response, argues that Lowery was contractually obligated to deliver a completed home to the Hagues, and its failure to do so is a contractual issue—not a coverage issue under a CGL policy. To conclude otherwise, Owners argues, would treat its CGL policy as a performance bond.

[¶12.]      Our analysis begins with an examination of the language in the specific policy at issue. Although courts interpreting CGL policies have reached conflicting conclusions on the implications of *that particular part* language, those cases do not alone render the policy in this case to be ambiguous. In fact, in *Swenson v. Auto-Owners Ins. Co.,* we interpreted this exact contract language and held that no ambiguity existed.[3] 2013 S.D. 38, ¶¶ 21-32, 831 N.W.2d 402, 409-12. Nevertheless, coverage in each particular case must be determined by the plain meaning of the language of each specific policy and the scope of coverage as applied to the unique facts of the case.[4] *Quinn v. Farmers Ins. Exch.,* 2014 S.D. 14, ¶ 16,

---

3.    *Swenson* is factually distinguishable and not controlling. In *Swenson,* the contractor used defective materials throughout the home. More importantly, unlike *Swenson,* the present case deals only with the duty to defend. Nevertheless, our interpretation of the exact same contract language in *Swenson* aids our interpretation of 2(j)(6) and 2(j)(7) today.

4.    In *Am. Fam. Mutual Insurance Company v. Elliot,* we said:

An insurance policy is ambiguous when it "is fairly susceptible to two constructions." *Sunshine Ins. Co. v. Sprung,* 452 N.W.2d 782, 784 (S.D. 1990) (quoting *McGriff v. U.S. Fire Ins. Co.,* 436 N.W.2d 859 (S.D. 1989)). Ambiguity in an insurance policy is determined with reference to the policy as a whole and the plain meaning and effect of its words. *Id.* If the language of the policy is ambiguous, the policy should be construed liberally in favor of the insured and strictly against the insurer. *Pete Lien & Sons, Inc. v. First Am. Title Ins. Co.,* 478 N.W.2d 824, 827 (S.D. 1991); *Tri-State Ins. Co. v. Bollinger,* 476 N.W.2d 697, 701 (S.D. 1991); *McGriff,* 436 N.W.2d at 862. If the policy is unambiguous, however, its terms are to be construed according

(continued . . .)

#27946

844 N.W.2d 619, 623.  Indeed, CGL policies do not all contain the same coverage language, the same exclusions, or the same endorsements.

[¶13.]    As noted above, exclusion 2(j)(6), in this case, precludes coverage for physical injury to, or the loss of use of, "[t]hat particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations[.]"  Under the plain and unambiguous language of the policy, exclusion 2(j)(6), which references "that particular part of real property on which [the insured] is performing operations," applies only to "the immediate area involved in the operations *actively* being performed at the time of the property damage[.]" *See* Scott C. Turner, *Insurance Coverage of Construction Disputes* § 29:7 (2d ed.), Westlaw (database updated June 2017).  We agree that "[t]he exclusion should not apply to property damage to other, non-defective parts of the insured's work." *Id.*; *see also Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 213-14 (5th Cir. 2009).

[¶14.]    We turn then to the language of exclusion 2(j)(7).  That exclusion precludes coverage for physical injury to, or the loss of use of, "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was

_____

(. . . continued)
> to their plain and ordinary meaning.  *Pete Lien & Sons,* 478 N.W.2d at 827. The terms of an unambiguous insurance policy cannot be enlarged or diminished by judicial construction.  *O'Neill v. Blue Cross,* 366 N.W.2d 816, 818 (S.D. 1985).

523 N.W.2d 100, 102 (S.D. 1994).

incorrectly performed *on it*." (Emphasis added.) This language has been interpreted to plainly mean "that property damage only to parts of the property that were themselves the subjects of the defective work is excluded." *JHP Dev.*, 557 F.3d at 215; *accord Swenson*, 2013 S.D. 38, ¶ 28, 831 N.W.2d at 412. To conclude otherwise would fail to distinguish "the damaged property that was itself the subject of the defective work from other damaged property that was either the subject of nondefective work by the insured or that was not worked on by the insured at all." *JHP Dev.*, 557 F.3d at 215; *Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 311 (6th Cir. 2010); *Mid-Continent Cas. Co. v. Advantage Med. Elecs., LLC*, 196 So. 3d 238, 249 (Ala. 2015); Turner, *supra* ¶ 13, § 32:6.

[¶15.] The next question, then, is whether the facts alleged by the Hagues in their complaint against Lowery arguably fall within the above interpretations so that Owners had a duty to defend Lowery. The Hagues' complaint alleged that Lowery's failure to install drain tile at one corner of the foundation damaged their home. According to the complaint, Lowery's failure permitted water to reach expanding soil below the home, which caused damage to concrete, walls, ceilings, and windows. The Hagues did not allege that the concrete, walls, ceilings, or windows were defective themselves (exclusion 2(j)(7)) or that Lowery was presently working on those areas when the damage occurred (exclusion 2(j)(6)). Therefore, Owners has not met its burden of establishing that the damage to the Hagues' home clearly falls outside policy coverage, *see Hawkeye-Security*, 366 N.W.2d at 492, and Owners had a duty to defend Lowery against the Hagues' action.

[¶16.] This does not mean that Owners' CGL policy is in effect a performance bond. The purpose of a performance bond is to *ensure* completion of a contract, whereas the purpose of a CGL policy is to *insure* against tort liability. *See* 9A Steven Plitt et al., *Couch on Insurance* § 129:17 (3d ed.), Westlaw (database updated June 2017). Rather, an insurance contract covers what it covers according to its terms, and the *duty to defend* an insured against a third-party complaint is to be determined by examining the pleadings and the terms of the policy, not extrinsic evidence of trade customs. *See Hawkeye-Security*, 366 N.W.2d at 491-92. More importantly, an insurer has a duty to defend "[i]f even one claim is covered by the policy[.]" *Korzan*, 2015 S.D. 97, ¶ 13, 873 N.W.2d at 61.

### Conclusion

[¶17.] We conclude that Owners had a duty to defend Lowery because the Hagues' complaint arguably stated a claim covered under Lowery's CGL policy.

[¶18.] We reverse.

[¶19.] GILBERTSON, Chief Justice, and ZINTER and KERN, Justices, and WILBUR, Retired Justice, concur.