#28627-a-GAS
**2019 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DELRAY GEIDEL,                                         Plaintiff and Appellant,

    v.

DE SMET FARM MUTUAL
INSURANCE COMPANY OF
SOUTH DAKOTA,                                         Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DOUGLAS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE BRUCE J. ANDERSON
Judge

\* \* \* \*

ERIC R. KERKVLIET
DANA VAN BEEK PALMER
ROSS M. WRIGHT of
Lynn, Jackson, Shultz, & Lebrun, P.C.          Attorneys for plaintiff
Sioux Falls, South Dakota                              and appellant.


JESSICA L. LARSON of
Beardsley, Jensen & Lee, Prof. LLC             Attorneys for defendant
Rapid City, South Dakota                             and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS ON
JANUARY 7, 2019
OPINION FILED **04/10/19**

SEVERSON, Retired Justice

[¶1.]     Delray Geidel was insured under a farm liability policy issued by De Smet Farm Mutual Insurance Company.  He sold a portion of his farm property, and the purchaser constructed a hog confinement facility on that property.  Geidel's neighbors brought suit against him and the owner of the hog facility, alleging nuisance, trespass, and negligence.  De Smet refused to defend Geidel against the neighbors' lawsuit.  Geidel retained counsel and successfully defended the lawsuit.  He then filed a breach of contract action against De Smet, alleging De Smet had a duty to defend.  The parties filed cross-motions for summary judgment, and the circuit court granted De Smet summary judgment.  Geidel appeals.  We affirm.

## Background

[¶2.]     On April 16, 2013, Geidel conveyed a portion of his real property to Cedar Creek Feeders, LLC for the construction of a hog confinement facility.  As part of the sale, Geidel retained a right of first refusal to repurchase the property.  He also retained the right to acquire manure from the property.  Geidel was aware Cedar Creek would construct the hog facility within one-quarter of a mile of property owned by Herman and Jeanette Fink and other property owned by Karl and Alene Fink (collectively "Finks").  The Finks claimed they had informed Geidel of their objection to the location of the facility prior to construction.

[¶3.]     Cedar Creek finished constructing the hog facility in July 2013 and began operations.  On April 30, 2014, the Finks brought suit against Cedar Creek and Geidel.  They alleged claims for nuisance, trespass, and negligence based on the

construction and operation of the hog confinement facility. They sought injunctive relief and compensatory and punitive damages.

[¶4.] In May 2014, Geidel submitted a claim to De Smet Farm Mutual Insurance Company under his farm liability policy requesting that De Smet defend him against the Finks' lawsuit. A property claims manager contacted Geidel, and after reviewing the claim, De Smet declined to defend. In a letter sent to Geidel, De Smet explained that the Finks' complaint did not allege bodily injury, property damage, or an occurrence within the provisions of the insurance policy. The letter further indicated De Smet determined that "none of the claims being made come within the coverage[,]" and even if coverage existed, two policy exclusions applied.

[¶5.] After receiving De Smet's letter, Geidel retained his own counsel and defended the Finks' lawsuit. The jury returned a verdict in favor of Cedar Creek and Geidel on all claims. Thereafter, Geidel brought suit against De Smet, alleging breach of contract in failing to defend him against the Finks' lawsuit. The parties filed cross-motions for summary judgment. After a hearing, the circuit court granted De Smet summary judgment and denied Geidel summary judgment. The court concluded De Smet had no duty to defend Geidel. It determined the allegations within the Finks' complaint fell outside Geidel's policy coverage. Alternatively, it held that if coverage arguably existed, two policy exclusions precluded coverage.

[¶6.] Geidel appeals, asserting the circuit court erred when it granted De Smet summary judgment.

## Standard of Review

[¶7.]     We review a circuit court's decision on a motion for summary judgment under the de novo standard of review.  *N. Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 12, 873 N.W.2d 57, 61.  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Id.* (quoting SDCL 15-6-56(c)).

## Analysis

[¶8.]     We recently explained an insurer's duty to defend in *Lowery Construction & Concrete, LLC v. Owners Insurance Company*, 2017 S.D. 53, 901 N.W.2d 481.  Importantly, "[a]n insurer's duty to defend is distinct from—and broader than—its duty to indemnify."  *Id.* ¶ 8.  One distinguishing feature is the fact "[t]he duty to defend arises prior to the completion of litigation[.]"  *Id.* (quoting 14 Steven Plitt et al., *Couch on Insurance* § 200:3 (3d ed.)).  "[T]herefore insurers are required to meet their defense obligation before the scope of the insured's liability has been determined."  *Id.*

[¶9.]     Generally, "the allegations of the complaint or petition in the action brought against the insured" determine the duty to defend.  *Id.* (quoting *Hawkeye-Sec. Ins. Co. v. Clifford ex rel. Clifford*, 366 N.W.2d 489, 491 (S.D. 1985)).  Under this view, "[i]f it at least 'arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage, the insurer must defend.'"  *Id.*  A duty to defend "prevails notwithstanding

that ambiguous language reveals other claims not covered in the policy, and even though extraneous facts indicate the claim is false, groundless, or even fraudulent." *Id.*

[¶10.] The insurer must establish there is no duty to defend by showing that the claim clearly falls outside of policy coverage. *Hawkeye-Sec.*, 366 N.W.2d at 492. However, "[i]f, after considering the complaint, and when appropriate, other record evidence, doubt exists whether the claim against the insured arguably falls within policy coverage, such doubts must be resolved in favor of the insured." *Id.* As we recognized in *Hawkeye-Security*, "[t]his is especially applicable where those doubts exist pre-trial." *Id.*

[¶11.] A review of the Finks' complaint reveals the following allegations. Geidel had entered into an agreement to sell part of his land to Cedar Creek for the construction of a hog confinement facility. Cedar Creek applied for and received a building permit. When Cedar Creek obtained the permit, Geidel knew the structure, when built, would be located within one-quarter of a mile from the Finks' residential properties and less than one thousand feet from a "blue line stream" located on Herman and Jeanette Fink's property. Further, according to the Finks, Cedar Creek and Geidel knew or had reason to know the Finks would object to the facility "due to the close proximity of the barn to Plaintiffs' residential properties." The Finks asserted that despite this knowledge, Geidel did not consult with the Finks in determining whether the location of the hog facility "would be objectionable." Geidel also did not respond when the Finks sent Geidel and Cedar Creek a letter expressing their concerns before the facility was built.

[¶12.]     The Finks claimed that once operations began at the facility, they experienced a "very noticeable and disagreeable" hog smell upon their property. More specifically, they alleged "[a]s the pigs [grew] larger, the smell emanating from the facility [became] even more disagreeable, offensive, and nauseating, as the odors that emanate from there [were], at times, intolerable to plaintiffs and cause[d] them a great deal of discomfort." The Finks found "disconcerting" the sounds of the squealing pigs. Lastly, Karl and Alene alleged they would not be able to develop their property because of the location and operation of the facility.

[¶13.]     Based on the above factual allegations, the Finks asserted claims for nuisance, trespass, and negligence against Geidel and Cedar Creek. Geidel's acts constituted a nuisance, according to the Finks, because he "continue[d] to be jointly and severally liable for" depriving them of the use and enjoyment of their residential properties, for aiding and abetting the creation of the nuisance, and for benefiting and profiting from it. The Finks asserted Geidel committed trespass when he and Cedar Creek entered "into an agreement related to the construction of the commercial hog confinement structure" and "intentionally caused, or recklessly caused, foul odors to enter upon" the Finks' property. According to the Finks, Geidel owed them "a duty to prohibit such foul smells from entering the property owned by Plaintiffs." Further, they claimed Geidel owed them a duty to construct the facility in a location that would not disrupt or harm the Finks and to operate the facility in a manner that minimized its impact on the Finks. In the Finks' view, Geidel breached his duty because he "had **ample alternative locations** upon

which to locate a commercial hog confinement building, which would have resulted in no harm to Plaintiffs or other third persons."

[¶14.] We accept the alleged facts as true and examine Geidel's insurance policy to determine whether De Smet had a duty to defend against the Finks' nuisance, trespass, and negligence claims. *See Lowery Construction*, 2017 S.D. 53, ¶ 9, 901 N.W.2d at 485. Here, Geidel's farm liability policy provides: "**Coverage L – Personal Liability – We** agree to pay, up to **our limit**, all sums for which an insured is liable by law because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies." Under this same coverage provision, the policy provides: "**We** will defend a suit seeking damage if that suit resulted from **bodily injury** or **property damage** not excluded under this coverage."

[¶15.] Before we examine whether the Finks' claims against Geidel arguably fall within policy coverage, we address Geidel's argument that "the duty to defend depends only on whether the lawsuit allege[d] bodily injury or property damage, which [was] not excluded" and *not* whether an *occurrence* was alleged. He claims that an occurrence is not required because the language describing De Smet's duty to defend does not use the word *occurrence*. We disagree. The unambiguous language describing De Smet's duty to defend under this policy specifically connects the duty to defend to "this coverage." And "this coverage" requires "**bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies." Therefore, to invoke De Smet's duty to defend, the Finks' complaint must allege an arguably qualifying occurrence.

[¶16.] The policy defines an "occurrence" as "an accident, including loss from continuous or repeated exposure to similar conditions, which results during the policy period, in bodily injury or property damage, *neither expected nor intended from the standpoint of the insured.*" (Emphasis added.) De Smet contends the Finks' complaint does not allege an occurrence because no fact evinces an "accident." It emphasizes that the placement of the facility was not an accident. It further contends Geidel was aware the Finks objected to the location and operation of the hog confinement facility before it was constructed.

[¶17.] Geidel, however, claims that the relevant inquiry is whether the injury to the Finks was expected or intended by Geidel and not whether the acts were intentionally performed. He then asserts that the Finks' complaint and the record evidence demonstrate he did not expect the Finks to object to the hog confinement facility. He further contends the Finks' claimed injuries were unexpected because he "could not and did not expect that his neighbors would sue him for use of property he sold to Cedar Creek" and he "could not expect to be dragged into the lawsuit by the Finks, much less expect to be blamed for injuries resulting from the hog barn in which he does not own, run, or work."

[¶18.] "Accident" is not defined by the policy. However, the term "accident" in the insurance context has been commonly viewed as something that causes an "unexpected" or "unanticipated" injury or damage. *See Am. Fam. Ins. Group v. Robnik*, 2010 S.D. 69, ¶¶ 9–11, 787 N.W.2d 768, 771–72. We have further indicated that an accident has been defined as "an undesigned, sudden and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a

manifestation of force." *State Farm Mut. Auto Ins. Co. v. Wertz*, 540 N.W.2d 636, 639 (S.D. 1995) (quoting *Taylor v. Imperial Cas. & Indem. Co.*, 82 S.D. 298, 302–03, 144 N.W.2d 856, 858 (1966)).

[¶19.]     While the record demonstrates Geidel may not have expected to get sued by the Finks because of Cedar Creek's operation of the hog confinement facility, the allegations and record establish Geidel knew his neighbors would see, hear, and smell the facility on the property sold by Geidel. Moreover, even if Geidel did not expect the Finks to object to hog confinement facility because they had previously raised hogs and Karl and Alene lived in Minnesota (away from their South Dakota property), the Finks' complaint sets forth that prior to construction, they informed Geidel and Cedar Creek of their concerns. Therefore, the Finks' claims do not allege an "occurrence" as it is defined by the policy.

[¶20.]     The Finks' negligence claim likewise does not allege an "occurrence" under the policy. The complaint asserts Geidel owed the Finks a duty to construct the facility in a location that would not disrupt or cause harm to the Finks. But Geidel did not construct the facility. As the Finks' complaint identifies, Geidel sold Cedar Creek real property, and Cedar Creek obtained the building permit and constructed the facility.

[¶21.]     Nevertheless, the Finks also alleged that Geidel acted negligently because he "had **ample alternative locations** upon which to locate a commercial hog confinement building, which would have resulted in no harm to Plaintiffs or other third persons." This statement, we assume, relates to the Finks' claim that Geidel should have sold different real property to Cedar Creek for the construction

and operation of a hog confinement facility. We recognize that "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." *See Owners Ins. Co. v. Tibke Constr., Inc.,* 2017 S.D. 51, ¶ 17, 901 N.W.2d 80, 85 (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 8 (Tex. 2007). But, here, Geidel's sale of real property to Cedar Creek was not an "occurrence" because under no set of facts alleged in the complaint would the mere selling of property to an objectionable purchaser invoke coverage.

[¶22.] It is well settled that a duty to defend does not exist when an insurer shows "the claim *clearly* falls outside of *policy coverage.*" *N. Star Mut. Ins. Co. v. Kneen,* 484 N.W.2d 908, 912 (S.D. 1992) (second emphasis added). From our review, De Smet has established that none of the claims against Geidel, if true, arguably fell within Geidel's policy coverage, including incidental liability coverage. *See id.*; *accord Lowery Constr.,* 2017 S.D. 53, ¶ 8, 901 N.W.2d at 484. Because De Smet did not have a duty to defend Geidel, the circuit court did not err when it granted De Smet summary judgment.

[¶23.] Affirmed.

[¶24.] GILBERTSON, Chief Justice, and KERN, Justice, concur.

[¶25.] JENSEN and SALTER, Justices, dissent.

JENSEN, Justice (dissenting)

[¶26.] De Smet had a duty to defend Geidel because it was at least arguable that the Finks' negligence claims against Geidel alleged an "occurrence" under the

policy.  The policy defined an "occurrence" as, "an accident, including loss from continuous or repeated exposure to similar conditions, which results during the policy period, in bodily injury or property damage, neither expected nor intended from the standpoint of the insured."  The definition of an "accident" included a "loss from continuous or repeated exposure to similar conditions," and not just a one-time, sudden event.  Further, the question of whether the damage was expected or intended must be examined from Geidel's perspective.

[¶27.]       The gravamen of the negligence claims against Geidel was that he chose a rural location for the confinement facility too close to the Finks' home, "had ample alternative locations . . . which would have resulted in no harm to [the Finks]," and the facility was not being operated to minimize "the impact . . . upon adjoining land owners."  The complaint acknowledged the construction of the facility was approved by the county and there were no allegations the facility was constructed or operated in violation of any regulatory laws.  Nonetheless, when the Finks commenced their suit and De Smet refused to defend Geidel, there was little information alleged regarding Geidel's knowledge about the size and operation of the facility when he sold the property to Cedar Creek.  A negligence claim, by its very nature, involves only "an 'unreasonable risk of harm to another'"—a more modest showing of knowledge or culpability than the standard set by the policy's definition of an occurrence.  *See Fischer v. City of Sioux Falls*, 2018 S.D. 71, ¶ 8, 919 N.W.2d 211, 215.

[¶28.]       The conference opinion concludes this was not an occurrence because Geidel knew that the Finks "*would* see, hear, and smell the hog confinement

facility" and knew of the Finks' objections to the construction of the facility before construction. While the Finks alleged they *did* see, hear, and smell the operation after it was constructed, the Finks' negligence claims did not allege that Geidel knew the Finks "would see, hear, and smell" the operation before he selected the site and sold the property.[1] In fact, the complaint alleges nothing about what Geidel knew about the hog confinement facility or its operation before this time. Instead, the Finks alleged Geidel negligently selected the site for the facility when he sold the land and that he "knew, or had reason to know that the *existence of such facility would be objectionable to* [the Finks], due to the close proximity of the barn to [the Finks] residential properties." (Emphasis added.) The bare allegation that Geidel knew the facility was "objectionable" to the Finks is not the same as alleging that Geidel "expected or intended" that the facility and the activity associated with its operation would cause harm to the Finks. This is particularly true of the harm alleged in the form of a devaluation of fair market value of the Finks' home.

[¶29.] The Finks' objections to the facility's proximity to their home was a factor in considering the extent of Geidel's knowledge or understanding of the risk. However, it does not satisfy De Smet's burden to show Geidel "*clearly*" "expected or

---

1. The Finks alleged an alternative count for punitive damages claiming that Geidel "knew, or should have known, that his actions would cause harm" to the Finks. The alternative trespass and punitive damages claims did not impact De Smet's duty to defend the negligence claim, as an insurer's duty to defend exists even if some of the claims in the policy are not covered. *Lowery Constr.*, 2017 S.D. 53, ¶ 8, 901 N.W.2d at 484.

intended" to cause the Finks harm.[2] The Finks' subjective beliefs that the location of the proposed facility was "inappropriate" does not resolve the more fact-intensive question of whether Geidel expected or intended to cause the Finks harm when he selected a site to construct the facility.

[¶30.] Recently, in *Owners Ins. Co. v. Tibke Constr., Inc.,* 2017 S.D. 51, 901 N.W.2d 80, this Court considered whether a homeowner's claim for damages against a building contractor was a covered "occurrence" under the contractor's liability policy. The homeowner claimed the contractor failed to conduct soil testing prior to construction, as required by the contract, causing the home to settle after it was completed. We recognized that faulty work by a contractor during construction resulting in subsequent damage to the homeowner may be an accident under the policy definition of "occurrence." Citing a Texas Supreme Court decision, we stated, "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the

---

2.  In the context of reviewing a determination that a proposed 6000-hog confinement facility constituted a nuisance, this Court observed the fact-intensive nature of considering the full impact such a facility may have on surrounding neighbors:

    > It is not the feedlot itself that is the nuisance. It is the feedlot combined with other factors relied upon by the County Commission as a basis for its decision that makes this feedlot a nuisance in fact in this specific location. *The circumstances and surroundings* are the key to this facility being declared a nuisance. (Emphasis added.)

    *Coyote Flats, LLC. v. Sanborn Cty. Comm'n,* 1999 S.D. 87, ¶ 35, 596 N.W.2d 347, 355.

deliberate act been performed correctly." *Id.* (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007).

[¶31.] Here, the same analysis applies. The Finks alleged Geidel's act of selecting a site in close proximity to their rural home was negligent and caused them damage. The Finks alleged that Geidel could have selected a site on his property that would not have caused them harm. In other words, the complaint alleged it was not the facility itself that caused the Finks' damages, but Geidel's decision in selecting a site for the facility that caused their harm. De Smet simply did not have sufficient facts alleged in the complaint to reach a definitive conclusion that Geidel should have expected or intended his site selection decisions and other actions would cause harm to the Finks or diminish the value of their property. Without knowing any details about the operation of the facility, or the extent of Geidel's personal knowledge of the operations at the time the site was selected and constructed, De Smet has not met its burden to show it was "clear" that Geidel expected or intended to cause the Finks harm. Coverage was at least arguable on the negligence claim and De Smet should have provided a defense to Geidel.

[¶32.] Because of its resolution of the "occurrence" issue, the majority opinion does not address the other two exclusions De Smet relied on to deny coverage and a defense to Geidel. I would conclude that the circuit court erred in determining that neither exclusion excused De Smet's duty to defend.

[¶33.] The first policy exclusion relied on by De Smet was the exclusion providing that "Personal Liability does not apply to . . . bodily injury or property damage to or from premises you sell, give away or abandon, if the bodily injury or

property damage arises out of such premises or a part of such premises." This Court has previously stated that "[w]hen an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.,* 2012 S.D. 73, ¶ 9, 822 N.W.2d 724, 727. The circuit court concluded this exclusion was applicable because Geidel had conveyed all his interest in the property where the confinement facility was built and was no longer an owner at the time the Finks filed their lawsuit.

[¶34.] Although Geidel may have no longer owned the property, the court did not consider whether the Finks' alleged bodily injury or property damage arose from the premises that Geidel sold. The Finks did not allege their damages were the result of Giedel's property as it existed when it was sold. The Finks alleged that all of their damages occurred *after* the construction of the confinement facility on the premises. Since the confinement facility did not exist at the time Geidel sold the property, the damages alleged by Finks did not arise from the premises sold by Giedel.

[¶35.] This reading is consistent with a similar "premises alienated" exclusion examined in *Prudential-LMI Commercial Ins. Co. v. Reliance Ins. Co.*, 27 Cal. Rptr. 2d 841 (Cal. Ct. App. 1994). There, the appeals court explained that the intent of such an exclusion is to "deny coverage to an insured who has failed to repair property prior to its sale or who has failed to disclose the existence of a defect in the premises at the time of sale." *Id.* at 844. This exclusion did not support De Smet's denial of coverage or denial of the duty to defend.

[¶36.] De Smet also erroneously relied on the pollution exclusion to liability coverage. The pollution exclusion afforded no coverage for damages arising from the "discharge, dispersal, release or escape of pollutants into or upon land, water, or air." The policy defines a "pollutant" as, "any solid, liquid, gaseous, thermal or radioactive irritant or contaminant, including . . . waste." The policy's definition for "waste" includes "all material to be disposed of, recycled, reconditioned or reclaimed." The circuit court concluded the pollution exclusion was applicable because the odors from the hogs and the manure produced by the operation qualified as pollutants under the policy. Although this conclusion may be accurate, the court did not consider the Finks' claims that they suffered damages from the noise and visibility of the facility. Any damage to the Finks from noise and sight would fall outside the pollution exclusion. Since some of the claims are not within the pollutant exclusion, De Smet was not completely relieved of its duty to defend Geidel.

[¶37.] I would reverse the circuit court's order granting summary judgment in favor of De Smet and denying summary judgment in favor of Geidel. I would remand for further proceedings consistent with this opinion.

[¶38.] SALTER, Justice, joins this dissent.